UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONNIE CONRAD, as Trustee of the LACY H. MCDEARMON REVOCABLE TRUST, *Plaintiff*, -against- JOSEPH FISHER and EYAL WALLENBERG, *Defendants*. | Case No. **VERIFIED COMPLAINT** **JURY TRIAL DEMANDED** |

Plaintiff Connie Conrad, as trustee of the Lacy H. McDearmon Revocable Trust ("Plaintiff"), by her undersigned attorneys, HGT Law, as and for her Verified Complaint against Defendants Joseph Fisher and Eyal Wallenberg ("Defendants"), alleges as follows:

**INTRODUCTION**

1. This is an action for conversion arising from Defendants' intentional and unauthorized dominion over an asset of the Lacy H. McDearmon Revocable Trust (the "Trust"). Specifically, Defendants have unlawfully asserted dominion over the proceeds from the sale of a co-op apartment owned by the Trust, located at 440 West End Avenue, #14A, New York, New York 10024 (the "Apartment"). In this action, Plaintiff, the duly appointed Trustee of the Trust, seeks to recover those sale proceeds.

2. During his lifetime, Lacy H. McDearmon created the Trust, and transferred into the Trust, among other assets, Mr. McDearmon's shares in the Apartment. Accordingly, the Apartment *prima facie* belongs to the Trust.

3. Upon Mr. McDearmon's death, Plaintiff, as Trustee, began to arrange for the sale of the Apartment. However, prior to the execution of the sale, Defendants contacted the co-op

board of directors of the Apartment and asserted a claim to the Apartment. On the basis of a prior will that had been prepared by and subsequently terminated by Mr. McDearmon, Defendants advised the Trustee that they would disrupt the sale of the Apartment if the proceeds of the sale were distributed according to the terms of the Trust.

4. Defendants took these actions despite the fact that they were not beneficiaries of the Trust and had previously been disinherited by Mr. McDearmon in *two* subsequent wills that Mr. McDearmon created after he ceased having a relationship with Defendants. However, in order to allow the sale of the Apartment to proceed, Plaintiff was forced to agree to enter into a stipulation with Defendants to prevent them from disrupting the sale, and the Apartment sale proceeds were placed in an escrow account.

5. In order to challenge the Trust and assert any purported claims, Defendants are required to commence a legal action and obtain a judgment or order to enforce any asserted rights to the Trust. It is now *nearly three years* since Defendants improperly and without authority attempted to disrupt the sale of the Apartment by falsely claiming they had a right to the Apartment, and *over a year* after the sale proceeds were deposited in the escrow account. Yet Defendants have not brought any legal action to challenge the Trust. Accordingly, Defendants have no legal right to exercise dominion over the Trust and its assets, and no basis for refusing to allow the Trustee to dispose of the Trust assets in accordance with Mr. McDearmon's wishes.

6. Accordingly, the Trustee brings this action for a determination by this Court as to the legal authority of the Trust to control the Apartment sale proceeds and for an order releasing the monies out of the escrow account and into the custody of the Trustee.

## JURISDICTION

7. This Court has subject matter jurisdiction over the claims in this action pursuant to

28 U.S.C. § 1332 because there is diversity of citizenship among the parties, and the amount in controversy exceeds $75,000. As alleged further below, Plaintiff is a citizen of New York State while Defendants are citizens of Illinois State.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claim occurred in this district, and the property that is the subject of the action is situated in this district.

## PARTIES

9. Plaintiff Connie Conrad, as trustee of the Lacy H. McDearmon Revocable Trust, is a natural person and a citizen of the State of New York.

10. Plaintiff Lacy H. McDearmon Revocable Trust was created on April 6, 2016 in New York, New York.

11. Defendant Joseph Fisher ("Fisher") is a citizen of the State of Illinois.

12. Defendant Eyal Wallenberg ("Wallenberg") is a citizen of the State of Illinois, and is the spouse of Fisher.

## FACTUAL ALLEGATIONS

**I.    THE 2013 AND 2015 LAST WILLS AND TESTAMENTS OF LACY H. MCDEARMON**

13. On November 26, 2013, Mr. McDearmon executed a Last Will and Testament (the "2013 Will"). In the 2013 Will, Mr. McDearmon bequeathed the Apartment to Defendants. Defendants were not related to Mr. McDearmon, but at the time of the 2013 Will, Defendants resided part-time with Mr. McDearmon in the Apartment as his friends. In the 2013 Will, Mr. McDearmon also expressed his wish that his sister Joan Rainey be permitted to visit at the Apartment after his death.

3

14. After Mr. McDearmon executed the 2013 Will, Defendants moved out of Mr. McDearmon's Apartment and began residing full-time in Brooklyn, New York. Upon information and belief, Defendants removed the original copy of the 2013 Will from the Apartment without Mr. McDearmon's permission or knowledge.

15. In or about September 2014, Defendants assisted Mr. McDearmon in finding a caregiver to reside with him and provide care. Upon information and belief, Defendants recommended to Mr. McDearmon that Radu Brylynskei act as his caregiver.

16. In about September 2014, Mr. Brylynskei began to reside in the Apartment with Mr. McDearmon and act as his daily caregiver.

17. In or about 2014 or 2015, Defendants relocated to Chicago, Illinois. Upon information and belief, Defendants ceased having regular contact with Mr. McDearmon.

18. On March 23, 2015, Mr. McDearmon executed a new Last Will and Testament (the "2015 Will"). In the 2015 Will, Mr. McDearmon named his nephew James P. Rainey, Jr. as the Executor, and bequeathed "all [his] real estate," which included the Apartment, as well as "all tangible personal property" to Mr. Rainey. Additionally, in the 2015 Will, Mr. McDearmon bequeathed the amount of $25,000 to Mr. Brylynskei, stating that Mr. Brylynskei "presently resides with me in my apartment and [] has assisted me greatly." In the 2015 Will, Mr. McDearmon made other bequests to several friends whom he had also named in his prior 2013 Will.

19. Importantly, in the 2015 Will, Mr. McDearmon disinherited Defendants and did not name Defendants as beneficiaries. A true and correct copy of the 2015 Will is attached hereto as **Exhibit A**.

II. **THE 2016 LACY H. MCDEARMON REVOCABLE TRUST**

20. On April 6, 2016, Lacy H. McDearmon created the Trust. A true and correct copy of the Trust Agreement is attached hereto as **Exhibit B**.

4

21. In the Trust Agreement, Mr. McDearmon named his Trustees as John Thomas Yust ("Yust") and Plaintiff, with Plaintiff as the Successor Trustee.

22. In the Trust Agreement, Defendants were not named as beneficiaries of the Trust.

23. The Trust assets include the Apartment. Specifically, the Trust Agreement provided that, at Mr. McDearmon's death, the Apartment was to be distributed to Mr. Brylynskei, who at the time was still Mr. McDearmon's long-time caregiver.

24. In the Trust Agreement, Mr. McDearmon also made other real property bequests to his nieces and nephew. Additionally, Mr. McDearmon made monetary bequests to his relatives and friends, including most of the individuals that he had named in his prior 2013 Will and 2015 Will, except that Mr. McDearmon again did not name Defendants as beneficiaries of the Trust.

25. On April 6, 2016, Mr. McDearmon also created a pour-over Will (the "2016 Will"), that addressed all residual assets not placed in the Trust.

26. Mr. McDearmon named Plaintiff as the Executor of his 2016 Will.

27. Mr. McDearmon again did not name Defendants as beneficiaries in the 2016 Will.

28. Subsequently, in or about April 2016, Mr. McDearmon contacted TIAA Financial Services ("TIAA") to change the beneficiary designation on his retirement accounts held with TIAA (the "TIAA Accounts").

29. Previously, Mr. McDearmon had designated Defendant Fisher as the beneficiary of his TIAA Accounts. However, when he contacted TIAA, Mr. McDearmon informed TIAA that he had created the Trust, and that he now wished for the Trust (and not Defendant Fisher) to be the beneficial owner of his pension.

30. On August 17, 2018, the Apartment was formally transferred to the Trust. A true and correct copy of the share certificate evidencing the Trust's ownership of shares in the Coop is attached hereto as **Exhibit C**.

31. In or about late 2019, Mr. McDearmon's health declined and he began receiving hospice care at his home in the Apartment.

32. On or about November 27, 2019, in the days preceding Mr. McDearmon's death, Defendant Fisher called Yust in New York from Fisher's home in Chicago. During the call, Defendant Fisher questioned Yust about Mr. McDearmon's estate.

33. On November 30, 2019, Mr. McDearmon passed away at the age of 87 years. Until his death, Mr. McDearmon had resided in the Apartment with Mr. Brylynskei as his caregiver.

34. Upon information and belief, on December 2, 2019, only two days after Mr. McDearmon's death, Defendant Fisher came to New York to obtain a copy of Mr. McDearmon's death certificate.

35. On December 26, 2019, despite being no relation to Mr. McDearmon and not being an executor to Mr. McDearmon's estate, Defendant Fisher contacted TIAA to inform TIAA that Mr. McDearmon had passed away.

36. Subsequently, upon information and belief, Defendant Fisher submitted Mr. McDearmon's death certificate to TIAA.

37. Upon information and belief, Defendants had also previously removed documents concerning the TIAA Accounts from Mr. McDearmon's home without Mr. McDearmon's knowledge or permission.

38. In or about January 2020, Defendant Fisher obtained custody of the amounts held in Mr. McDearmon's TIAA Accounts. At the time, the TIAA Accounts were valued at approximately $1,000,000.

39. The Estate of Mr. McDearmon is currently seeking recovery of Mr. McDearmon's TIAA Accounts from Defendants in a separate turnover proceeding in Surrogate's Court, New York County brought by Plaintiff, as the Executor of Mr. McDearmon's Estate (the "Surrogate's Court Proceeding").

### III. THE SALE OF THE APARTMENT AND THE JULY 19, 2021 STIPULATION

40. Following Mr. McDearmon's death, Plaintiff, as the Trustee of the Trust, began to make arrangements for the sale of the Apartment.

41. On February 19, 2020, Defendants, through their attorney, contacted the co-op board of the Apartment ("Co-Op Board") by letter (the "February 19, 2020 Letter"). A true and correct copy of the February 19, 2020 Letter is attached hereto as **Exhibit D**. In the February 19, 2020 Letter, Defendants' attorney gave "formal notice to the Board of Directors that, under no circumstances should the Board of Directors approve the transfer, sale or assignment of the Apartment." *Id*. at 2 (emphasis omitted).

42. Additionally, Defendants improperly, and without any authority, demanded that the Board provide them with Mr. McDearmon's personal and financial documents including "all documents and information regarding the Trust, wills executed subsequent to the 2013 will, the transfer of the Apartment to the Trust, the transfer, assignment or gifting of the Apartment to Mr. Brylynskei, and any and all documents filed with the New York County Clerk or New York County Surrogate's Court regarding the Apartment." *Id.*

43. Despite acknowledging that Mr. McDearmon had transferred the Apartment to the Trust and created at least one new will subsequent to the 2013 Will, Defendants, without any

7

evidence, asserted to the Board that there was "clear indicia of undue influence, fraud, and conversion of the Estate's assets" and falsely implied that Mr. Brylynskei was improperly residing in the Apartment. *Id*.

44. In addition, on February 19, 2020, Defendants, through their attorney, also sent threatening letters to Plaintiff, Plaintiff's attorney, Mr. McDearmon's prior attorney who drafted the 2013 Will, and Yust. In these letters, Defendants and their attorney demanded Mr. McDearmon's personal and financial documents, and, without evidence, alleged "undue influence, fraud and conversion of the Estate's assets."

45. On October 15, 2020, Yust formally resigned as Trustee of the Trust, and Plaintiff became the sole Trustee of the Trust.

46. On or about May 17, 2021, Plaintiff secured a buyer for the Apartment.

47. On June 18, 2021, on the basis of the 2013 Will, Defendants, through their attorney, filed Verified Objections to Probate of the Last Will of McDearmon in the Surrogate's Court Proceeding in which they contested the probate of the 2016 Will. As described above, the 2016 Will was a pour-over will that addressed all assets not placed in the Trust. Importantly, Defendants did not commence any legal action to challenge the Trust, nor did nor did Defendants commence any legal action to challenge the 2015 Will.

48. On or about June 24, 2021, Plaintiff's counsel and Defendants' counsel spoke by telephone regarding the sale of the Apartment. Defendants' counsel confirmed their intention to stop the sale of the Apartment if the proceeds of the sale were to be distributed according to the terms of the Trust.

49. In order to allow the sale of the Apartment to proceed, and to prevent the problems that would result from delaying the sale, Plaintiff was forced to agree to enter into a stipulation

8

with Defendants. On July 19, 2021, the parties entered into a Stipulation (the "July 19, 2021 Stipulation"). A true and correct copy of the July 19, 2021 Stipulation is attached hereto as **Exhibit E**. Under the terms of the July 19, 2021 Stipulation, the net proceeds from the sale of the Apartment would be held in an attorney escrow account held by the Trust's real estate attorney, Richard E. Tesler, Esq. ("Tesler") until December 29, 2022. After that date, the net proceeds would be distributed 50% to the attorney escrow account for Plaintiff's attorney, and 50% to the attorney escrow account for Defendants' attorney. *Id.* at ¶¶ 11-12. The Stipulation provided that the net proceeds would only be released from these attorney escrow accounts "by consent of all Parties' attorneys, and, unless otherwise agreed by the Parties' attorneys, if there is an adjudication of the disputed matters relating to the Decedent, Decedent's Wills, Decedent's Trust, and the Co-op." *Id.* at ¶ 13.

50. On August 30, 2021, the Apartment sale closed, and on that same day, the net proceeds from the sale in the amount of $2,114,299.02 were deposited in an escrow account held by Tesler (the "Escrow Account").

51. On July 5, 2022, in the Surrogate's Court Proceeding, the Surrogate's Court issued an Order Directing Issuance of Preliminary Letters Testamentary to Plaintiff. Importantly, in the Surrogate's Court Proceeding, all of Mr. McDearmon's beneficiaries under both the 2013 Will (except for Defendants) and the 2016 Will have now filed waivers with the Surrogate's Court consenting to admit the 2016 Will to probate.

52. On December 2, 2022 Plaintiff issued a written demand to Defendants requiring them to release all the monies in the Escrow Account to the Trust. On that same day, Plaintiff's counsel responded and rejected the demand, threatening sanctions if Plaintiff commenced any legal action to recover the monies held in the Escrow Account.

53. In order to challenge the Trust, Defendants are required to commence a legal action contesting the Trust and to obtain a judgment and/or order to enforce any claims that they assert with respect to the Trust. However, during the *nearly three years* since Defendants improperly and without authority intervened to disrupt the sale of the Apartment, Defendants have not brought any legal action to challenge the Trust. Despite this, Defendants continue to assert dominion over the proceeds of the Apartment sale, and refuse to agree to release these monies to the Trust.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### CONVERSION

54. Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

55. The Trust has legal title to the Apartment.

56. Plaintiff, in her capacity as Trustee, has a possessory right to, and is lawfully entitled to receive, the Apartment sale proceeds, which are an asset of the Trust.

57. Defendants are not Trustees of the Trust.

58. Defendants are not beneficiaries of the Trust.

59. Defendants are not administrators of the estate of Mr. McDearmon.

60. Defendants have not obtained a judgment or other order to enforce any claims that Defendants assert to the Trust.

61. Defendants have exercised dominion over the assets of the Trust by threatening to disrupt the sale of the Apartment unless the parties entered into the Stipulation and placed the Apartment sale proceeds in the Escrow Account.

62. Defendants continue to exercise dominion over the assets of the Trust by refusing Plaintiff's demand that the Apartment sale proceeds be released from the Escrow Account to the Trust.

63. Defendants' exercise of dominion over the assets of the Trust was without legal right and was otherwise unauthorized. As such, Defendants have withheld and converted monies that belong to the Trust and that are required to be distributed to Plaintiff, as Trustee.

64. Defendants' continued dominion and control over the Apartment sale proceeds is in derogation of Plaintiff's right to these funds.

65. As a direct and proximate result of the foregoing, Defendants have damaged Plaintiff in an amount to be determined at trial, including interest, costs and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
## UNJUST ENRICHMENT

66. Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

67. The Trust has legal title to the Apartment.

68. Plaintiff, as Trustee, has a possessory right to, and is lawfully entitled to receive, the Apartment sale proceeds, which are an asset of the Trust.

69. Defendants are not Trustees of the Trust.

70. Defendants are not beneficiaries of the Trust.

71. Defendants are not administrators of the estate of Mr. McDearmon.

72. Defendants have not obtained a judgment or other order to enforce any claims that Defendants assert to the Trust.

73. Defendants have exercised dominion over the assets of the Trust by threatening to disrupt the sale of the Apartment unless the parties entered into the Stipulation and placed the Apartment sale proceeds in the Escrow Account.

74. Defendants continue to exercise dominion over the assets of the Trust by refusing Plaintiff's demand that the Apartment sale proceeds be released from the Escrow Account to the Trust.

75. As a result of Defendants' retention and/or control of the Apartment sale proceeds, Defendants have been enriched at the expense of Plaintiff.

76. Defendants' retention and/or control of the assets of the Trust was without legal right and was otherwise unauthorized. Under these circumstances, it is against equity and good conscience and otherwise unjust to permit Defendants to retain such enrichment.

77. Defendants' wrongful retention of the Apartment sale proceeds has damaged Plaintiff in an amount to be determined at trial, including interest, costs and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully demands judgment as follows:

A. Declaring that Plaintiff is the bona fide Trustee of the Trust, that the Apartment sale proceeds belong to the Trust, and that Plaintiff has the legal authority to receive the Apartment sale proceeds;

B. Awarding to Plaintiff monetary damages against Defendants in an amount to be determined at trial;

C. Awarding to Plaintiff prejudgment interest;

D. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees and expenses; and

E. Granting such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

DATED: December 8, 2022
New York, New York

By: _____
**HGT LAW**
Hung G. Ta, Esq.
JooYun Kim, Esq.
Natalia D. Williams, Esq.
250 Park Avenue, 7th Floor
New York, New York 10177
Tel:   (646) 453-7288
Fax:   (646) 453-7289
Email: hta@hgtlaw.com
       jooyun@hgtlaw.com
       natalia@hgtlaw.com

*Attorneys for Plaintiff Connie Conrad, as Trustee of the Lacy H. McDearmon Revocable Trust*

## VERIFICATION

I, Connie Conrad, declare that I have reviewed the Verified Complaint ("Complaint"), and I authorize its filing. The Complaint is true and correct to the best of my knowledge, information and belief. As to those allegations of which I have personal knowledge, I believe the allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel's investigation and also believe those allegations to be true. I declare under penalty of perjury that the foregoing is true and correct.

DATED: December 8, 2022

_____
CONNIE CONRAD