

February 9, 2023

By ECF

Hon. P. Kevin Castel, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 11D
New York, New York 10007

      Re.    Connie Conrad, as Trustee v. Fisher and Wallenberg
             Case No. 1:22-cv-10395-PKC

Dear Judge Castel:

      We represent Defendant Joseph Fisher and Eyal Wallenberg ("Defendants") in the above-captioned matter, which is scheduled for an Initial Pre-Trial Conference before Your Honor on February 24, 2023 at 11:00 AM. We write pursuant to Section 3(A) of the Court's Individual Practices and Rules requiring a promotion letter before filing a Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted.

      By way of introductory background, Plaintiff and Defendants are parties to an ongoing contested probate proceeding in the Surrogate's Court, New York County, encaptioned *Matter of McDearmon*, File No. 2020-317. Plaintiff is the Executor of the April 2016 purported last Will and Testament of Lacy Harrison McDearmon, Jr. ("Decedent") who died in November 2019. In their Verified Objections in that case, Defendants assert that Decedent was persuaded to draw a new will in April 2016 that disinherited Defendants, by way of fraud and undue influence, and that it did not reflect his true intentions. The person who exercised the fraud and undue influence is alleged to be Radu Brylynskei, a bodybuilder who succeeded Defendants as Decedent's caretaker and shut them off from contact with him. It is noteworthy that discovery has not been completed in the case because Brylynskei has thus far refused to respond to a Subpoena Duces Tecum, Petitioner has not provided HIPAA authorizations to obtain Decedent's medical records to establish his capacity or lack thereof at the time of the Will in question, and no depositions have occurred. Although a Citation has issued, and jurisdiction is complete, the Court has not set a discovery schedule in the case, meaning that Defendants have not been able to conduct the full and fair discovery needed to prove their allegations.

      Plaintiff, apparently tired of the long but currently unavoidable Surrogate's Court process, now seeks to improperly evade the consequences of a Stipulation her own attorney signed with her consent, end-run the Surrogate's Court, waste Federal Court resources on a matter that should be determined in the Surrogate's Court, and seek adjudication of a matter that falls within the probate exception to Federal jurisdiction. The Court should dismiss the case.

Hon. P. Kevin Castel, U.S.D.J
February 9, 2023
Page 2 of 5

While Plaintiff alleges that Defendants have somehow acted to "convert" Decedent's assets, this dispute actually concerns a Stipulation the parties signed at the time of the closing on Decedent's co-operative apartment. It is the proceeds ("Proceeds") of that sale that constitute the primary asset of Decedent's estate under the pourover 2016 Will and Trust that flow from it. While Defendants have not specifically filed Objections to the Trust, they intend to do so and are well within the Statute of Limitations to do so running from Decedent's death in 2019. Again, however, such action would properly be brought as a part of the ongoing Surrogate's Court proceeding, not before the Southern District. And, notwithstanding, Plaintiff, represented by counsel, signed a Stipulation agreeing to hold the funds in escrow until the issues in the Surrogate's Court proceeding have been resolved. They are not resolved. If Petitioner wants to vacate the Stipulation, she should seek to do so in Surrogate's Court.

### I.     Subject Matter Jurisdiction.

Under FRCP 12(b)(1), a clam is "properly dismissed for lack of subject matter jurisdiction under [FRCP] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In deciding an FRCP 12(b)(1) motion to dismiss, "the district court must take all uncontroverted facts in the complaint ... as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). Notwithstanding, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

### II.    The Stipulation Is In The Exclusive Jurisdiction Of The Surrogate's Court And Not The Southern District, And Can Only Be Vacated By The Surrogate

It is well-settled that a stipulation "is an enforceable contract." *Aberra v. City of New York,* No. 18-cv-011389 (LAK) (SLC) 2020 WL 11772386 (S.D.N.Y. Jul 1., 2020, Cave, M.J.). "Only where there is cause sufficient to invalidate a contract such as fraud, collusion, mistake, or accident, will a party be relieved from the consequences of a stipulation made during litigation." *Doe v. SUNY Purchase College*, No. 21-cv-8417 (KMK), 2022 WL 2972200 (S.D.N.Y. Jul. 27, 2022, Karas, J.) at *7, *Chem. Leaman Tank Lines, INc. v. Aetna Cas. & Sur.*, 71 F.Supp.2d 394, 397-99 (D.N.J. 1999). "The Court has control over stipulations, and power to relieve from the terms thereof when the parties can be placed in status quo. But the stipulation will not be destroyed without a showing of good cause such as fraud, collusion, mistake, accident, or some other ground of the same nature." *In re. Fruitiger's Estate*, 29 N.Y.2d 143, 149, 272 N.E.2d 543 (1971). Notably, the desire to avoid the consequences of a stipulation is not a grounds to overturn it. *House v. Guadagno*, No. 04-cv-0449 (JS)(ETB), 2010 WL 843884 (E.D.N.Y., Mar. 9, 2010, Seybert, D.J.) at *3.

However, "[w]hen a stipulation does not represent the intent of the parties, the remedy of the aggrieved party [here, allegedly Petitioner] is to move in the court wherein it was entered to vacate it." *Matter of Horton's Estate*, 51 A.D.2d 856, 857, 379 N.Y.S.2d 569 (4th Dept. 1976).

Indeed, "a party may not seek relief from a stipulation in a court other than where it was originally entered." *In re. New York Skyline, Inc.*, 432 B.R. 66. 83 (Bankr. S.D.N.Y. 2010).

Here, Plaintiff does not allege fraud, collusion, mistake, accident or some other ground of the same nature as a basis for overturning the Stipulation. Moreover, the Stipulation was entered into in the Surrogate's Court, not before the Southern District. Therefore, Plaintiff's remedy, even presuming she has valid grounds to do so, is not to commence this superfluous action; but rather, to move to vacate the Stipulation in the Surrogate's Court, New York County, wherein it was entered. For that reason, the Southern District lacks subject matter jurisdiction to entertain Plaintiff's claims, Defendants' should be granted permission to move to dismiss if Plaintiff will not withdraw this action.

### III. Doctrine of Abstinence

"[A] federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in comprehensive disposition of litigation, and abstention would conserve judicial resources." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulation Dist.*, 673 F.3d 84, 100 (2d Cir. 2012).

Here, the parties specifically agreed under the Stipulation that, in the context of the Surrogate's Court proceeding, "pending resolution of the foregoing disputes" over the co-op proceeds, the Proceeds would be held in escrow. Over a year later, Plaintiff has now introduced the new argument that Defendants somehow "converted" the funds *she* agreed should be held in escrow. Defendants have complied with all of the terms of the Stipulation and there is no allegation they have not. Moreover, there is no claim that the funds are not in the escrow account where they should have been and should still be deposited. But even if there were, such claim should be litigated as a breach of the Stipulation in its Court of origin—the Surrogate's Court.

It is respectfully submitted that what should *not* happen is that a second set of pleadings, a second tribunal, and a second trial should now occur so that Plaintiff can circumvent the jurisdiction of the Surrogate's Court and force the Defendants to fight a two-front war of attrition. In the Surrogate's Court, once discovery is completed and the probate and forthcoming Trust-related petitions have been finally decided, those decisions by the Surrogate will result in comprehensive disposition of the disputes between Plaintiff, Defendants, and others. Instead, Plaintiff now seeks to utilize additional judicial resources to attempt to forum-shop to resolve claims that are already before one Court. The precise purpose of the abstention doctrine is to prevent this wasteful and unnecessary behavior from litigants. Accordingly, based upon the abstention doctrine, this Court should decline to exercise subject matter jurisdiction and permit Defendants to file an FRCP 12(b)(1) motion.

### IV. The Issues In Dispute Fall Within The Probate Exception Doctrine.

The "probate exception doctrine" is a judicial doctrine that precludes a Federal Court, such as the Southern District, from hearing "probate matters", *i.e.*, the probate or annulment of a will and the administration of a decedent's estate. *Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006). Moreover, courts have applied the probate exception doctrine to trusts. See, *e.g.*,

Hon. P. Kevin Castel, U.S.D.J
February 9, 2023
Page 4 of 5

*Kennedy v. Trs. Of Testamentary Tr. Of Will of Kennedy*, 406 F. Appx. 507 (2d Cir. 2010); *Mercer v. Bank of New York Mellon, N.A.*, 609 F. Appx. 677 (2d Cir. 2015).

Here, Plaintiff asks this Court to step into the shoes of the Surrogate's Court, vacate the Stipulation that Plaintiff knowingly and voluntarily entered into and which her attorney signed, and administer what she claims should be the corpus of the trust in the context of probating Decedent's estate. The Stipulation specifically states, however, that the Proceeds will only be released from the attorneys' escrow accounts "by consent of all Parties' attorneys, *if there is an adjudication of the disputed matters relating to the Decedent, Decedent's Wills, Decedent's Trust, and the Co-op"* (Stipulation, ¶ 13).

Consequently, this is an attempt by Plaintiff to evade the provisions of the stipulation and cause the Southern District to exercise jurisdiction over a *res* in the custody of the State court. However, as the New York County Surrogate's Court ruled long ago, "this court [the *Surrogate's* court] has jurisdiction of all further proceedings in this estate. The fact that the executor has distributed the assets does not deprive the court of jurisdiction. This court has the power to compel the executor to account, the power to direct a proper distribution of the estate, and as an incident thereto, the power to order the refund of any property heretofore distributed erroneously." *In re. Hug's Estate*, 201 Misc. 709, 107 N.Y.S.2d 664, 666 (Sur. Ct., N.Y. Co., 1949). Here, Plaintiff alleges that the Proceeds are part of the Trust and should not have been distributed to the escrow accounts even though her attorney signed the Stipulation which expressly contemplated doing so until all disputes—including those relating to Decedent's Wills and Trust—had been adjudicated *by the Surrogate's Court*. Thus, Plaintiff asks this Court to assert control over the Trust after agreeing to have such control adjudicated by the Surrogate's Court. That is precisely what the probate exception doctrine is intended to prevent. Therefore, the Court should permit Defendants to file an FRCP 12(b)(1) motion to dismiss on this ground, as well.

### V.     Failures To State A Claim Under FRCP 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* Both Plaintiff's claims are fall short of such standard.

**A. Conversion**

Plaintiff alleges conversion because Defendants allegedly "threatened to disrupt the sale" unless the Proceeds were escrowed. Plaintiff alleges she was "forced" to sign the Stipulation, even though her attorney did so (Complaint, ¶¶ 48-49). There is not a shred of documentary evidence cited by the Complaint that Defendants in any way "forced" Plaintiff to sign anything, particularly under the guidance of an attorney.

Under New York law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone

Hon. P. Kevin Castel, U.S.D.J
February 9, 2023
Page 5 of 5

else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49 (2006).  However, in this case, Plaintiff, by her attorney's signature on the Stipulation, authorized first the real estate closing counsel, Richard Tesler, Esq., to hold the proceeds in his escrow account (Complaint, ¶ 50), and then if the matters stated in the Stipulation had not been adjudicated by December 29, 2022, that 50% of the Proceeds would be transferred to Plaintiff's, and 50% of the Proceeds would be transferred to Defendants' respective attorneys' escrow accounts (Complaint, ¶ 49).  Any "control", exercised by Defendants, then, is exercised wholly with Plaintiff's authority and indeed in consultation with her attorney.  Secondly, Defendants, themselves, do not "control" any of the Proceeds. It is not as though they have been deposited into Defendants' personal checking accounts; as the Complaint concedes they are deposited in an attorney escrow account, to which Defendants do not have access or control (Complaint, ¶ 61).  Thus, the Complaint fails to state critical elements of a conversion claim, and should be dismissed pursuant to FRCP 12(b)(6).  The Court should therefore permit Defendants to file a motion to that effect.

### B. Unjust Enrichment

"To state a claim of unjust enrichment under New York law, the plaintiff must allege (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or [benefit] to the plaintiff. [. . .]  A complaint does not state a cause of action in unjust enrichment if it fails to allege that defendant received something of value which belongs to the plaintiff." *Bazak Intern. Corp. v. Tarrant Apparel Group*, 347 F.Supp.2d 1, 3-4 (S.D.N.Y. 2004).

Here, however, Plaintiff alleges only that Defendants have retained control of the sale proceeds under the terms of the Stipulation that Plaintiff's attorney voluntarily signed (Complaint, ¶¶ 66-77).  Yet the reality is that Defendants have not personally received anything; both parties are abiding by the terms of the Stipulation they executed through their counsel, which Plaintiff is now improperly seeking to thwart by filing a second lawsuit in the Southern District.  Accordingly, since the Complaint fails to state a claim for unjust enrichment (and essentially re-pleads Plaintiff's conversion claim), the Court should permit Defendants to move for dismissal pursuant to FRCP 12(b)(6).

For all of the foregoing, the Court should permit Defendants to file their motion to dismiss under FRCP 12(b)(1) and 12(b)(6), respectively.  We thank the Court for its consideration of and attention to this request.

Respectfully submitted,

_____/s/ O*wen A. Kloter*_____
Owen A. Kloter, Esq.

cc. Natalia Williams, Esq. (by ECF)
    Hung G. Ta, Esq. (by ECF)